Good morning, your honors. May it please the court, my name is Tim Scott for the appellant Joshua Hester. Mr. Hester's first argument is that the district court erred in holding that restitution was mandatory for this offense under 18 U.S.C. 1957, which is a conspiracy to commit money laundering. Is that the issue that was also raised in the companion case? That's correct, your honor. United States v. Marco Luis, which is pending before the court. Right, I was just going to ask you, is there any reason why we shouldn't just sit tight on that kind of issue? And there are several others that seem to be in the same boat. Just sit tight until the Luis decision comes out. I think that's probably prudent, frankly, because the Luis court heard the identical issue, identical facts. It's probably a good time to point out that I may have been a little presumptuous in my 28J letter. I think I described it as we anticipate a published decision is forthcoming. Obviously, that's not for me to say. That's simply speculation on my part, but a decision one way or the other. Are there any issues that are not controlled by Luis? The only wrinkle that's different than Luis is in our case restitution was imposed 90 days after the statutory timeline described by 3663A. To be perfectly candid, that's not our strongest issue. It's not the best issue. I concede that it's got- Well, you've got Dolan now standing in your way from the Supreme Court, which seems to say that's probably not a reversible error. It's not our strongest issue. I would point out that there's a difference between holding that it's not jurisdictional on one hand and then just turning around and saying, well, the 90 days doesn't matter whatsoever. Let me ask you a more troubling question. Yes. It has bothered me. I'm not sure we have appellate jurisdiction to entertain your argument that the district court erred in not setting the amount of restitution at sentencing because Mr. Hester did not appeal his sentence but waited several months to appeal the order setting the amount of restitution. So how do we get over my jurisdictional concern? Well, because the amount of restitution is our concern and is our problem. But if you waived your challenge to the fact that the court ordered restitution, then it doesn't matter whether you quibble over the amount. Well, I don't think that we waived whether they could impose restitution. I don't think that's the issue presented to the court. Your notice of appeal only addresses the amount, and you didn't file. I mean, it seems to me the proper way to do it, easy to say in hindsight, and I've been in your shoes, so I'm empathetic, would have been to file a protective notice of appeal within 14 days of the court's order at sentencing that restitution would be imposed in this case in an amount to be determined later, then file a second notice of appeal within 14 days after the court ordered the amount of restitution, move to consolidate the two. Now, maybe I'm being overly picky, but jurisdiction in federal court is always an issue of concern to us. So can you help me on this issue? Well, I would be happy to help the court on the issue, and frankly, I could probably be of more help to the court if the government had raised that issue and challenged jurisdiction. I mean, it goes to our power. I mean, I appreciate the fact that it would have been nice if somebody on your side of the bench had raised the issue, but I'm raising it now. Right. Would your answer to Judge Shulman be perhaps there was nothing that the order that you were complaining about, the one that you had the gripe with, hadn't been entered yet? That's exactly so. That's exactly so. And the reason, Your Honor, that I say I could be more helpful is simply that I could provide briefing, I could look into the issue. Part of your problem is that wasn't there a waiver, a limited appellate waiver? There's a limited appellate waiver, but the language of the waiver drafted by the government, and, of course, it's true against the government as a matter of contract law, says any lawful restitution order. And our position, of course, is that this is an unlawful restitution order. So I think that there's jurisdiction to determine or not jurisdiction. Why isn't that issue ripe when the judgment and commitment order is entered? Because our gripe, if you will, our concern was with the amount of the order, and the amount didn't come to fruition until it was opposed again. Then you've waived the challenge to the lawfulness of ordering restitution, have you not? No, because the lawfulness is in the amount. The devil's in the details, so to speak. Our concern about the lawfulness is that an unlawful amount was imposed. So it's one of those situations that's not uncommon where the merits of the appeal sort of become baked into the appellate waiver issue. And so if the court determines that restitution was lawful after all, then you could also hold that we waived appeal. Am I correct that the reason for the delay was even though the district court had conducted a two-day evidentiary hearing 10 days before your client was sentenced in the other case, that the government suggested, and I assume you wanted, that there be a sufficient opportunity to review the transcripts and then, I believe Judge Gonzales said, and then raise whatever concerns you might have to the restitution? That's true. Okay. That's what happened. And that's to explain why it took more than 90 days? Correct. Okay. Which, again, is why that's not my strongest argument, quite candidly. If the court would like me to discuss whether restitution should be mandatory, I'm happy to do that. If, as the court suggests, it's more prudent to wait for the other panel to resolve the Luis case, then perhaps I should submit and sit down. That's fine with me. Thank you. Very good. Thank you, Your Honor. Judge Rawlinson. Judge Rawlinson, did you have anything? I'm fine. Okay. May it please the Court. Larry Spalding for the United States. I do think the Roper's case, which came after the oral argument in the first case, does lend some insight into whether restitution is mandatory. And that is, the argument is, the petitioner's argument is that it's categorical. You have to take a categorical approach. We argue, no, when you have that fraud and deceit later, that makes it circumstance specific. And now we have Roper saying that the property involved in a case like this is not the real property, but it's the loan. It's the money lent. And how does that support your argument that there can be no categorical determination of whether or not restitution is mandatory? Because when you look at, when the statute says, offenses involving fraud and deceit, then you have to look to the conduct involved in it, and that's the circumstance specific approach. And because the fraud was involved in obtaining a loan, then I think Roper's lends some, not great support, but some support to our argument. I would just point that out. Do you see any jurisdictional problems? You know, I think technically, and I don't want to argue something for any other case, I think technically I could argue that they missed the deadline, but I don't think it would be fair under the circumstances of this case. I think everybody understood. I think the court certainly understood that the defendant here was going to be challenging the restitution. So what was the purpose of the limited appellate waiver? Why not simply say, you know, carve it out of the? I think, quite frankly, when I looked into this, my first intuition was to say they waived it. However, Ninth Circuit law, I think, makes it clear. If you don't include some sort of cap amount when you ask someone to waive restitution, the waiver, it can't be enforced. It doesn't include the amount. The waiver does not include the amount. And the waiver does not include the amount, and that's why I didn't make that argument. I think the law is against us. So the only issue, then, is Roper's calculation. I think it does change. Clearly, the district court used the Young approach, but here I think in using the Roper's approach, frankly, defendant gets another $100,000 in restitution hit when it comes to the Rancho Santa Fe property because you look to the time when the property was actually sold. You no longer look to when someone took control. And when it was sold, it was sold for approximately $100,000 less than what the bank put in at its floor bid. Does it make a difference in calculating restitution that the bank bought these loans for pennies on the dollar? Does that make any difference at all? Yeah. I need to make something clear here. J.P. Morgan, I think. Yeah, J.P. Morgan. J.P. Morgan did not buy these loans for pennies on the dollar. J.P. Morgan bought the bank, and the district court made a finding. J.P. Morgan did not buy loans, bought the assets and liabilities, that's what a company is, of Washington Mutual. So what significance was the testimony of the person designated that there was no idea how much the loans were purchased for? What was the import of that testimony? Why was it presented? I believe that was presented on cross-examination. The defendant in the case continues to believe that loans were purchased. They look at it as a loan purchase. But the testimony was clearly not that the loan was purchased. The money bought the bank, not the loans. And actually, if you look at the purchase of the loans, they actually lost money on that part. Well, that's what got Washington Mutual into trouble in the first place, was their mortgage lending practices. Yes. So your point is that when the comptroller of the currency, or FDIC, or whoever it was, sold Washington Mutual to J.P. Morgan, they said, here's the bank, you get all of its assets and all of its liabilities, and here's the price we're going to sell it for. Right. Here's what we're going to get for it, and you guys have to deal with the bad loans. And all that testimony, what that testimony was directed at was, okay, when we buy a bank, we have to price out the assets and liabilities for our accounting purposes. That's what we did. We looked at, and again, credit-impaired loans and figured what they were worth was so much on the dollar, not what we purchased them for. And that's the distinction that the defendant doesn't seem to get, and the district court did. And the district court made a finding on that. I'm sorry. Go ahead. The district court made a finding. The district court made a finding, and it can't be clear error for the court to have relied on the testimony that was uncontroverted, that it was a purchase of the bank, not the loan. So if we had, here's a hypothetical. If we had a situation where after the acquisition there had been a sale of a portfolio, as frequently happened, of a package of mortgages to some third party, then we would look at what the sale price per loan was. Absolutely. That's young. Yes, absolutely. That's what you would do. But that's not what happened here. What happened here is FDI took it over. Simultaneous with the takeover, they sold it to J.P. Morgan. And I think that the point I want to make is the only way this court can overrule is to find clear error. It can't be clear error for the district court to have relied on this expert testimony by the bank vice president and without any contradiction. And now defendant wants to recharacterize that. That's fine. But it's not clear error for the court to have done it. If there aren't any further questions. Thank you. Mr. Scott, did you have anything else you wanted to add? Maybe just in response to those comments. Two items that I wouldn't mind responding to that the government just raised are, one, the effect of rovers, and, two, this argument that it's the bank that was acquired and not the loan. We differ from the government in that, in our view, rovers actually supports Mr. Hester's position. Rovers made clear that if there is an intervening event, if there is an independent business decision that is the reason for the loss, then that's not restitution that's properly attributable to the defendant. So I think that this decision on the part of Citibank or City Mortgage to wait eight months for its own reasons and to perhaps try to do a workout with the holder of that loan and the fact that the value of the loan declined $100,000 is Citibank's decision to make and not something that can be attributable to the conduct of the defendant under the circumstances. Well, the problem with your argument is, of course, these were troubled loans at the time that Washington Mutual failed. And this was not a situation where these loans were securitized in tranches and then sold on the mortgage market. I think you'd have a much stronger argument if that were the case. But clearly what happened here was the FDIC sold the bank, including all of its assets and all of its liabilities. And I think it's a stretch to try and say that that somehow reduces the defendant's restitution obligations in a loan that he fraudulently procured on property that was ultimately sold at a loss. Well, I think what it circles back to is sort of the initial question of whether this is an offense against property as opposed to an offense involving property. But money is property. That's the problem I'm having with your argument. And the money was the money that was fraudulently obtained from Washington Mutual as a result of the false statements in the loan application, which were then serviced by the proceeds of specified unlawful activity, i.e., the proceeds of drug dealing. I think that's the key distinction, and that's where we differ. If this was charged as a fraud case, I think that that's the correct analysis, and I think that's the point that the government wins on. Why isn't it relevant conduct for purposes of sentencing and restitution? Because this is a categorical analysis or ought to be a categorical analysis. In determining the restitution amount? Yes, because this is a money laundering offense. The question is whether the money laundering offense, as defined by statute under 1957, is necessarily and categorically and in all of its elements a crime against property as opposed to simply a crime involving property. The distinction between against property and involving property, I think, is highlighted by this case and by the money laundering statute generally. But what case in the Ninth Circuit are you relying upon to bolster your categorical analysis approach? What case can we look to to help us to understand that approach? As to why it should be a categorical analysis? As to why it is a categorical analysis? We look to the Supreme Court Leocal decision, which admittedly is not an MVRA decision, but it does interpret Section 16, which defines crime or violence. So it strikes us that there's no principled reason to use a categorical analysis in determining what is a crime of violence, but not using a categorical analysis. I realize this is heresy, and maybe there's circuit authority that says this, but this categorical analysis is getting out of hand. I mean, we're talking restitution to the victims of crimes, not whether or not something is a categorical match under Taylor or subject to the modified categorical approach. I just don't understand why this even applies to sentencing and restitution. Right. Well, I do have a response to that question as to why it shouldn't be heresy, but I'm running out of time. Does the Court remind us? If you've got an answer, we'd like to hear it. Okay. Here's why it's here. Even if I'm a heretic. All right. Here's why it's not heresy. As a policy matter, I think that it is appropriate to do the categorical analysis to ensure that not every case which hypothetically involves property can then devolve into a wrestling match about restitution. And what I mean by that is this. For the money laundering statute, 1957, virtually any money laundering case is going to involve property. Let's imagine a hypothetical where a drug kingpin buys a car wash to launder his money. Now, I might be basing this on the show Breaking Bad, but you don't have to watch that show to understand the hypothetical. Let's say that you own the car wash and that the kingpin owns the car wash on his own. Acquired with drugs. Paid cash for it, for example. With drug money. With drug money. Okay. And is using the car wash just to launder the drug money. If we were to envision a circumstance where somehow maybe somebody's car was damaged in the car wash, or maybe there's some leaching from the chemicals that damages a neighboring property or something, you could envision some loss to some person from the offense of money laundering in some sort of an attenuated way, but it's not caused by an offense against property. In that situation, the offense, money laundering, is. . . But your hypothetical is almost a Paul's graph analysis as to what's reasonably foreseeable to the actor. Right. When he engages in the crime of money laundering. But it's not. . . So now we're going to import tort principles in addition to the Taylor categorical analysis. But it's not so different from this case, and here's why I say that. This case is about money laundering, and it's about using drug money, in this case, from medicinal marijuana dispensaries, which is drug money under federal law, to buy a parcel of property on Palomar Mountain and to buy a home in Rancho Santa Fe. And to use those properties in connection with the drug offenses. That's the part that the car wash, perhaps, hypothetical did not have. Perhaps, but not necessarily. I mean, you could use Palomar Mountain to grow marijuana, but you don't have to. And you could use Rancho Santa Fe. I thought the facts were that those properties were indeed used in conjunction with the marijuana. I think the record is for Palomar Mountain, there was some sort of generalized talk and kind of a long-term plan to perhaps use the property to harvest marijuana, although that never came to fruition. And I think there was some evidence that the property at Rancho Santa Fe, there was a smallish marijuana grow in some secret compartment. But I think the point is that for money laundering, the offense could involve property to clean the money, but be victimless, at least in the sense of a crime against property. It wouldn't be affecting property, whether by destroying it or affecting property by obtaining it by fraud or deceit, like in the car wash example. This issue is squarely raised in the lease as well. It is. Anything else from you? Thank you, Mr. Scott. All right, thank you very much. Appreciate it. Both fair lawyers as well. Thank you. The case has just started. You can submit it. Good morning.
judges: SILVERMAN, TALLMAN, RAWLINSON